# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

| | |
|---|---|
| ALICE THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 5:20-CV-00002-MAS |
| v. | ) |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## OPINION & ORDER

Plaintiff Alice Thompson ("Thompson") appeals the Commissioner's denial of her application for disability and disability insurance benefits (here, collectively "DIB") under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") benefits under Title XVI of the SSA.[1]  The Court confronts the parties' dueling summary judgment motions.  [DE 15, 17].  For the reasons here discussed, the Court finds that the Administrative Law Judge ("ALJ") applied the proper legal framework and supported his non-disability finding with substantial evidence in the record.  The Court thus grants the Commissioner's motion and denies Thompson's competing effort.

---

[1] The legal standard for SSI claims mirrors the standard for DIB claims.  *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table).  "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Thompson, then 41 years old, filed a DIB application on July 28, 2016, and protectively filed an SSI application on May 12, 2016. [R. at 18]. In both applications, Thompson alleged a disability onset date of April 26, 2011. [*Id.*]. Thompson completed high school and some college coursework. [R. at 43]. She has prior experience as a daycare employee, personal health assistant, warehouse/factory worker, and cashier. [R. at 46–50]. The Social Security Administration denied Thompson's DIB and SSI claims initially on October 11, 2016, and again upon reconsideration on January 11, 2017. [R. at 18]. Thompson filed a written request for a hearing on March 3, 2017. [*Id.*].

ALJ Greg Holsclaw conducted a hearing on September 21, 2018, in Lexington, Kentucky. [R. at 38]. Patsy Hughes, a non-attorney representative, represented Thompson at the hearing, and impartial Vocational Expert ("VE") Laura Lykins was also present and testified. [R. at 38–82]. At the hearing, Thompson amended the alleged onset date for both her DIB and SSI claims to May 12, 2016. [R. at 18]. ALJ Holsclaw issued an opinion on January 3, 2019, finding that Thompson was not disabled under the SSA during the relevant period. [R. at 18–31]. ALJ Holsclaw found that Thompson met the insured status requirements through September 30, 2018, and had not engaged in substantial gainful activity since the alleged onset date. [R. at 21]. He further found that Thompson suffered from several severe impairments, including asthma/chronic obstructive pulmonary disease ("COPD"), Barrett's esophagus, high blood pressure, hyperlipidemia, obesity, depression/dysthymia, and anxiety. [*Id.*]. However, the ALJ concluded that none of Plaintiff's impairments met or equaled a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 21–24]. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926, 404.1520(d), 404.1525, 404.1526.

ALJ Holsclaw ultimately determined that Thompson had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with several nonexertional

limitations. [R. at 24–29]. For instance, ALJ Holsclaw concluded that Thompson could not work in settings with pulmonary irritants, could remember simple tasks and sustain attention on tasks requiring minimal judgment for up to two-hour segments, could manage no more than occasional interaction with coworkers, supervisors, and the general public, and could accommodate no more than occasional changes in the workplace setting. [*Id.*].

Though the ALJ held that Thompson could not perform past relevant work [*see* 20 C.F.R. §§ 404.1565, 416.965], he found (based on her age,[2] education, and RFC) that she could perform jobs that existed in significant numbers in the national economy. [R. at 29–31]. *See* 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a. These representative jobs, as described in the Dictionary of Occupational Titles ("DOT"), included: hand packager, lamination assembler, cylinder checker, sorter, assembler of small products, and final assembler. [R. at 30]. ALJ Holsclaw considered the VE's testimony in this regard consistent with the DOT. [R. at 31]. He thus found that Thompson was not disabled under the SSA from May 12, 2016 through the date of his decision.[3] [*Id.*]. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Thompson sought Appeals Council review, and the Council denied the review request on October 31, 2019. [R. at 1]. Thompson subsequently filed this action in January 2020. [DE 1, Complaint]. The parties have filed cross-motions for summary judgment. [DE 15, 17]. Both motions are ripe for review.

---

[2] The ALJ incorrectly stated that Thompson was 36 years old on the amended alleged onset date of May 12, 2016. [R. at 30]. She would in fact have been 41 years old, based on her stated birthday in September 1974. [*Id.*]. In any event, this distinction does not impact the ALJ's job availability analysis, as Thompson was categorized as a younger person (aged 18–49) in either case. *See* 20 C.F.R. §§ 404.1563, 416.963.

[3] A prior SSA benefits denial, included in the administrative transcript, is not specifically at issue in this appeal. [R. at 83–106].

## II.   LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited.  The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").  Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286.  However, the Court need not comb the entire (lengthy) record in search for facts supporting under-developed arguments.  [*See* DE 16 (General Order No. 13-7) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")].  Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite

conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the proper five-step sequential analysis as conducted by an ALJ in determining disability status. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 416.920(a), 404.1520(a). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there.

### III. ANALYSIS

Thompson's overarching claim is that the ALJ's disability determination is not supported by substantial evidence in the record.[4] Specifically, Thompson argues (1) that the ALJ improperly

---

[4] Thompson challenges the ALJ's findings only as to mental health impairments and limitations. The Court thus does not discuss the physical impairment evidence or conclusions.

and unreasonably discounted Plaintiff's subjective complaints and the Third-Party Function Report from Thompson's mother, Margaret Tungate; and (2) that the ALJ's mental RFC finding is unsupported by substantial evidence because it does not rest on sufficient medical guidance. The Court addresses each contention in turn.

A. **THE ALJ DID NOT IMPROPERLY DISCOUNT PLAINTIFF'S SUBJECTIVE COMPLAINTS OR THE THIRD-PARTY FUNCTION REPORT.**

1. **Thompson's Subjective Statements Concerning Symptoms and Functioning**

The Court first considers the ALJ's treatment of Plaintiff's subjective complaints concerning her mental health symptoms and related limitations. ALJ Holsclaw concluded that Thompson's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Thompson's statements concerning the intensity, persistence, and limiting effects of the symptoms were partially, but not entirely, consistent with the objective medical evidence and other evidence in the record. [R. at 25]. Based upon a reading of the ALJ's full decision,[5] it is clear that he declined to entirely credit Thompson's most limiting subjective complaints because he found them somewhat inconsistent with other statements (including hearing testimony) from Thompson concerning her daily functioning and activities, treatment notes from medical providers, and objective medical assessment evidence (including, primarily, Plaintiff's June 2015 Global Assessment of Functioning ("GAF") score). [R. at 23, 25, 27]. *See also Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (observing that courts "read the ALJ's decision as a whole and with common sense"); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (recognizing that "it is proper to read the ALJ's decision as a whole . . .

---

[5] As a matter of organization. the ALJ discussed Plaintiff's subjective complaints primarily in his evaluation of steps four and five of the sequential analysis.

because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at" various steps in the sequential process).

In determining whether and to what extent an ALJ should credit a claimant's subjective statements, the ALJ must consider the complete record, including medical evidence and any relevant nonmedical proof. 20 C.F.R. §§ 404.1529(c), 416.929(c). In addition to objective medical evidence, the regulations direct consideration of such factors as the claimant's daily activities, the duration, frequency, and intensity of symptoms, the type and effectiveness of any medication, and any other treatment the claimant receives or measures taken to alleviate symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Importantly, a lack of objective medical evidence to substantiate the claimant's subjective complaints cannot, standing alone, justify rejection of the subjective complaints. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994); *Ridge v. Astrue*, No. CIV.A. 12-50-JBC, 2012 WL 6652591, at *4 (E.D. Ky. Dec. 20, 2012) (citing Social Security Ruling 96-7p); *see also* Social Security Ruling 16-3p.

Here, the ALJ considered both medical and nonmedical proof in the record when weighing the credibility of Plaintiff's subjective complaints. The ALJ found that the medical proof (comprising both clinical data and providers' qualitative treatment notes) supported a finding of mild limitation with understanding and memory, based on evidence of normal memory and average intellectual functioning, and moderate social interaction limitations, based in part on providers' views that Plaintiff was pleasant and cooperative and the absence of any barriers to communication noted in the record. [R. at 23; *see, e.g.*, R. at 443 (Ex. B5F) (Progress Note from August 2017 indicating lack of memory loss and that Plaintiff was alert and cooperative upon examination); R. at 444 (Ex. B5F) (noting at same time that Thompson's comprehension was intact and she had logical thoughts, good insight, good judgment, and good recall); R. at 925 (Ex. B6F)

7

(noting in June 2017 that Thompson had an anxious but cooperative attitude, clear and coherent thought processes, normal cognition, adequate judgment, and average intellectual functioning); R. at 411 (Ex. B5F) (describing Thompson's depression as mild in February 2018)].

In addition to this evidence from the relevant period, the ALJ also considered Thompson's GAF score from June 2015. [R. at 27]. The GAF score of 60 indicated that Thompson had only moderate, and borderline mild, social functioning limitations. [R. at 360–63 (Ex. B2F) (reporting Thompson as a 60 on Axis V for DSM-IV [*i.e.*, the GAF score] and further noting that Thompson had average intelligence and good judgment, but limited insight and some impaired memory)]. The Commissioner fairly concedes that this statistic was recorded nearly a year before the start of the relevant period in this case and references a now-outdated scale (the GAF) that has been discontinued by the American Psychiatric Association. As Defendant concedes, it is thus of little value in assessing Plaintiff's functioning and determining the credibility of her complaints as of May 2016, and it does not provide substantial evidence supporting the ALJ's conclusions in that regard. However, it does not undermine the ALJ's broader reasoning or analysis, and ALJ Holsclaw's mental limitation findings are otherwise supported by medical evidence in the record as noted, as well as a lack of meaningful medical evidence demonstrating more restrictive limitations. The ALJ's partial reliance upon the GAF score thus does not render his overall medical-evidence-based conclusions concerning Thompson's subjective complaints unsupported or unreasonable.[6]

---

[6] Similarly, the ALJ's stray reference to Plaintiff's reduction in counseling frequency, though certainly inadequately explained and analyzed in the decision, was in no way foundational to ALJ Holsclaw's ultimate comparison of Thompson's subjective complaints and the medical evidence of record. *See Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 724 (S.D. Ohio 2019) (citing Social Security Ruling 16-3p) (explaining that, in analyzing whether an individual's decrease in treatment diminishes the credibility of her statements as to intensity and persistence of symptoms, the ALJ must consider potential reasons that the individual did not seek or participate

Moreover, ALJ Holsclaw considered and cited significant nonmedical evidence in the record to explain and support his handling of Thompson's subjective complaints. In particular, the ALJ noted some discrepancies and inconsistencies between Thompson's subjective statements at the administrative hearing and those made to providers during the course of treatment and in Thompson's own Function Report (Ex. B4E). For instance, the ALJ observed that, during the hearing in September 2018, Thompson reported that the mental health medications she was taking (including Geodon, Hydroxyzine, and Wellbutrin, among others) had not altered or improved her symptoms, such as her auditory hallucinations, at all. [R. at 55]. However, in December 2017, Thompson advised her treating provider that the Gedeon had helped with her auditory hallucinations and decreased their frequency. [R. at 429]. The ALJ also noted that Thompson claimed in her August 2016 Function Report that she never drove due to her discomfort with other cars on the road, but testified during the hearing that she drove approximately three to four times a month to travel to medical appointments. [R. at 23; *compare* R. at 44–45 (hearing testimony) *with* R. at 277 (Function Report)]. The ALJ further noted that some of Plaintiff's statements reflected engagement in activities such as shopping and socializing with her mother, while other statements conflictingly indicated that Thompson did not do these things. [R. at 25, 27; *compare* R. at 277 (stating in August 2016 that she shopped once or twice weekly in stores) *with* R. at 63–64 (stating in September 2018 that she had been shopping only four or five times in total since 2015 and did not shop on a weekly basis); *compare* R. at 278–79 (stating that she did not socialize

---

in treatment to a greater extent); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (observing that "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state" because "[f]or some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself"). The ALJ here mentioned the reduced counseling frequency only in passing [R. at 27], and even omitting it, substantial other evidence in the record supports the ALJ's findings concerning the objective medical support (or lack thereof) for Thompson's subjective statements.

with or see any other people) *with* R. at 64 (stating that her mother visited approximately three or four times a month)].

Finally, the ALJ found that some of Plaintiff's descriptions of her limitation levels were not consistent with Plaintiff's stated daily activities. [R. at 23]. Despite representing that she was able to concentrate for only two to three minutes at a time, Thompson stated that she frequently worked on puzzles, played word search games, and prepared simple meals for up to one hour. [R. at 274, 276, 278–79]. And, though Plaintiff at times endorsed participating in shopping and family socializing as discussed, she also represented that she could not be around others and had a fear of people talking to her. [R. at 277]. Finally, though Thompson specifically and reasonably challenges the ALJ's comment that she was able to garden at her home, as the record confirms that this activity happened on only one occasion, the ALJ did not centrally rely on Plaintiff's gardening in assessing the consistency between Plaintiff's alleged limitations and her stated daily activities and functioning. [R. at 27]. The Commissioner appropriately concedes that the gardening evidence is weak. However, even omitting the mischaracterized gardening proof, the ALJ's noted inconsistencies between Plaintiff's various factual statements and between Plaintiff's stated functional limitations and her daily activities are consistent with the full record and supported by substantial evidence.

In sum, ALJ Holsclaw properly considered the entire medical record, inclusive of both objective medical evidence and other relevant nonmedical factors (such as daily activities, medication and treatment, etc.) in assessing whether Thompson's subjective representations as to her symptoms' intensity, persistence, and limiting effect were consistent with the available proof. This approach complied with the governing case law and regulations. And, reviewing the ALJ's decision and his parsing of the various pieces of evidence, the Court finds that there is substantial

evidence to support the ALJ's partial crediting of Plaintiff's subjective complaints and his resulting determinations as to the nature and extent of Plaintiff's mental limitations. Even entirely disregarding ALJ Holsclaw's reference to the outdated GAF score, his brief mention of Thompson's reduction in counseling, and his observation concerning Thompson's gardening activity, there is a substantial body of combined medical and nonmedical evidence supporting the ALJ's treatment of Thompson's subjective reports. As discussed here at length and as the ALJ found, the objective medical evidence did not entirely support Plaintiff's subjective claims, and her own statements revealed several notable inconsistencies. The ALJ thus reasonably weighed Plaintiff's subjective complaints within the appropriate legal framework and in a manner supported by the record.

### 2. Tungate's Third-Party Function Report

Thompson briefly challenges the weight ALJ Holsclaw assigned to the Third-Party Function Report submitted by her mother, Margaret Tungate, in August 2016. [R. at 291 (Ex. B6E)]. The ALJ gave partial weight to Tungate's opinion within the report that Thompson engaged in considerable daily activities, suggesting some social and practical functioning capabilities. [R. at 28]. The ALJ found this opinion of Thompson's daily functioning largely consistent with the record. For example, Tungate stated that Thompson shopped in stores (with someone accompanying her) weekly. [R. at 295]. This statement is consistent with Thompson's representations in her own Function Report, though at the hearing Thompson denied shopping weekly. Relatedly, and though not specifically mentioned by the ALJ, Tungate's statements concerning Thompson's ability to do household chores and her regular preparation of simple meals mirrors Thompson's own statements and is substantially consistent with the record at large. [*Compare* R. at 293–94 (Tungate stating that Thompson can cook meals and do chores) *with* R. at

276 (Thompson stating that she can cook meals), 67 (Thompson stating that she does household chores); *but see* R. at 276 (Thompson failing to report that she performed any housework)].[7]

Ultimately, based on the full spectrum of proof regarding Thompson's daily activities, there is substantial evidence for the ALJ's decision to afford partial weight to Tungate's representations as to Thompson's daily functioning. Tungate's description of Thompson's daily activities is consistent with the bulk of evidence available (primarily, Thompson's own statements in her Function Report and at the hearing), but it was not wholly consistent with all such evidence. Further, as discussed in the previous section, the medical evidence in the record largely supports Tungate's opinion that Thompson could engage in the sort of daily activities reported. On balance, ALJ Holslaw's decision to afford this aspect of the Third-Party Function Report partial weight is reasonable in context and adequately supported by the record.

As distinct from Tungate's specific opinion as to Thompson's daily activity capacity, the ALJ gave the Third-Party Function Report little weight to the extent it suggested a more restrictive RFC finding that the ALJ otherwise found. [R. at 28]. Specifically, and as it relates to Thompson's ability to concentrate, apply information, and complete tasks, the ALJ noted that Thompson

---

[7] In finding the ALJ's treatment of Tungate's opinion regarding Thompson's capacity for daily activities reasonably supported, the Court does not rely upon the ALJ's reference to church attendance. [R. at 28]. The record is sharply conflicting in this regard, and Tungate's statement that Thompson attended church weekly is not consistent with any evidence during the relevant period. [*Compare* R. at 296 (Tungate stating in August 2016 that Thompson attended church weekly) *with* R. at 278 (Thompson failing to report any church activity as of August 2016) *and* R. at 64–65 (Thompson stating at the hearing in 2018 that she did not attend church and had not done so since approximately 2009)]. To the extent the ALJ found Tungate's report of church attendance consistent with the prior ALJ decision from February 2015, that decision and the evidence it discusses significantly predated the relevant period in this case, and such corroboration is of little value in evaluating Tungate's opinion's consistency with the present record. Nonetheless, even discounting any potential church attendance, Tungate's statements concerning Thompson's regular chores, meal preparation, and shopping have at least some independent corroboration from other evidence during the relevant period and support the ALJ's overall decision to afford Tungate's daily activities opinion partial weight.

12

reported ability to pay bills and manage funds, while Tungate stated that Thompson could not pay bills or manage a savings account. [R. at 23, 28; *compare* R. at 277 (Thompson stating that she could pay bills and manage her account/funds) *and* R. at 42 (Thompson stating that she lived in a house alone) *with* R. at 295 (Tungate stating that Thompson could not pay bills or manage funds)]. Additionally, though Tungate reported that Thompson needed to be told to bathe and dress [R. at 294], Thompson testified at the hearing and stated in her own Function Report that she was able to independently care for her own hygiene without any assistance [R. at 62, 275 (reporting no issues with personal care)].

Additionally, and as discussed *supra*, Tungate's suggested limitations concerning memory, concentration, and ability to apply information appear more restrictive than the medical evidence suggests. Tungate reported that Plaintiff is forgetful and can concentrate for only a maximum of ten minutes at a time. [R. at 297]. However, as noted, the objective medical proof from within the relevant period (summer 2017) reported that Thompson was alert and cooperative, lacked memory loss issues, had intact comprehension and good recall, and exhibited coherent thought and normal cognition. [R. at 443–44, 925]. These objective findings conflict with the more severely restricted functional capacity Tungate's report suggests. Based on the various inconsistencies between Tungate's functional estimate and both the nonmedical proof (including Thompson's own statements) and the objective medical evidence in the record, the ALJ reasonably assigned this aspect of the Third-Party Function Report little weight.

For these reasons, and based on the record as a whole, substantial evidence supports the breakdown of weight that ALJ Holsclaw afforded both Tungate's opinion as to Thompson's daily activities and Tungate's urged strict limitations as to Thompson's overall functional capacity. The

ALJ reasonably assigned the former partial weight and the latter little weight, on balance, and he did not improperly discount the Third-Party Function Report as a whole.

B.  **THE ALJ'S MENTAL RFC DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Thompson contends that ALJ Holsclaw's ultimate mental RFC conclusion is not supported by substantial evidence because the ALJ did not consider adequate medical proof from a mental healthcare professional. An ALJ must make the RFC determination "based on all the relevant evidence in [the claimant's] case record[,]" including both "relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. 416.945(a)(3). Per the regulations, the RFC assessment encompasses proof including objective medical evidence and clinical findings, as well as statements from the claimant and others describing any applicable symptoms or limitations. Critically, the Sixth Circuit has rejected the contention that an ALJ's failure to cite a medical opinion supporting his RFC conclusion categorically renders it unsupported by substantial evidence. *See, e.g.*, *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (collecting supportive cases). The case law Thompson cites is not inconsistent with this approach. *See Brown v. Colvin*, No. 5:12-CV-00145-LLK, 2013 WL 1703885, at *1 (W.D. Ky. Apr. 19, 2013) ("*Unless substantial evidence supports a determination of a claimant's RFC based solely on the non-medical evidence*, an ALJ's RFC finding must be supported by at least one medical opinion.") (emphasis added).[8]

---

[8] Relatedly, Thompson asserts that the ALJ's RFC determination is not supported by substantial evidence because it rested too heavily on the opinions of non-examining providers. [DE 15-1, at Page ID # 1163]. *See Sheehan v. Metro. Life Ins. Co.*, 368 F. Supp. 2d 228, 254 (S.D.N.Y. 2005) (observing, though not in the SSA context, that courts often disregard opinions of non-examining mental health professionals). But, as discussed *infra*, the ALJ here relied on a

Regardless, reading the ALJ's decision as a cohesive whole as the Court must, *see Rice*, 384 F.3d at 370 n.5, it is apparent that he considered a variety of medical proof—including both examining and non-examining sources—in reaching his RFC determination. It is likewise clear that he analyzed relevant nonmedical proof in the process. The Court thus finds that ALJ Holsclaw complied with the applicable regulatory standards and supported his RFC decision with substantial medical and nonmedical evidence.

At the outset, the Court recognizes the obviously shaky foundation for the ALJ's decision to assign great weight to the June 2015 medical opinions at Exhibit B2F. [R. at 359–61]. These findings were made nearly a year before the start of the relevant period, and they incorporated the now-outdated GAF score, which the Commissioner accurately concedes is of little value at this stage. The Court does not find that this particular weight assignment is adequately explained or supported by substantial evidence in the record and, thus, disregards it in evaluating whether the ALJ's ultimate RFC determination and analysis is otherwise supported by substantial relevant evidence.

Still, even discounting this individual weight assignment and omitting the corresponding medical opinion, the ALJ's full decision clearly incorporates relevant medical proof supporting the RFC outcome. For example, the ALJ reasonably assigned partial weight to the opinions of state agency consultants Dr. Dan Vandivier, Ph.D., and Dr. Alex Guerrero, M.D. [R. at 27]. The ALJ reasoned that these consultants' findings were largely consistent with the other evidence in the record. Indeed, as the ALJ found, Dr. Vandivier's October 2016 opinion that Thompson had mild restrictions on daily living activities and moderate difficulties in maintaining social

---

combined body of examining provider and state agency consultant medical proof, as well as nonmedical information in the full record.

functioning and concentration is supported in large part by both Thompson's and Tungate's subjective statements in their functioning reports and the observations of other medical providers throughout the record indicating relatively normal cognition and recall. [R. at 133–35 (Ex. B6A)]. Dr. Guerrero's parallel limitation findings in January 2017 are likewise consistent with such evidence. [R. at 165–67 (Ex. B8A)]. Given the substantial consistency between these state agency consultants' opinions and the other evidence, and in light of their reviewing but non-examining roles, the ALJ's decision to afford them partial weight is justified on this record.[9]

Additionally, as discussed in the preceding section, ALJ Holsclaw's decision makes clear that he considered other medical evidence in assessing Thompson's overall mental health functional limitations. [R. at 23–27 (discussing significant and varied body of medical proof); *see, e.g.*, R. at 443 (no memory problems and cooperative demeanor in August 2017; R. at 444 (intact comprehension and logical thoughts, good insight, good judgment, and good recall in August 2017); R. at 925 (clear and coherent thought processes, normal cognition, adequate judgment, and average intellectual functioning in June 2017); R. at 411 (mild depression in February 2018); *see also* R. at 670 (Ex. B6F) (noting in May 2016 that Thompson was well-groomed and exhibited normal perception and cognition and adequate judgment, but preoccupied thought content and little to no insight); R. at 411 (noting history of mild depression in February 2018)]. He further

---

[9] Thompson briefly criticizes Dr. Vandivier's and Dr. Guerrero's inability to review later medical evidence that she alleges indicates more restrictive limitations, namely the treatment notes from Dr. Kathleen Lindsay, Ph.D., in June 2018 that provided low Outcome Rating Scale ("ORS") scores. [*See, e.g.*, R. at 698–700]. The ORS is a subjective, self-reported measure of the patient's own perceived wellbeing in various functional areas, and it captures very limited detail. *See* McInnes, Barry, *Made to Measure: The Outcome Rating Scale* (October 26, 2018), https://therapymeetsnumbers.com/made-to-measure-the-outcome-rating-scale/. Given the nature of this measure and the ORS scores' partial inconsistency with other subjective representations from Thompson near this timeframe concerning her daily functioning, they do not materially impact the relevant evidentiary landscape or undermine the value of the state agency consultants' earlier opinions.

considered and appropriately weighed the relevant nonmedical proof, including Thompson's Function Report (R. at 273–81), Thompson's statements at the administrative hearing (R. at 38), and Tungate's Third-Party Function Report (R. at 291–99). ALJ Holsclaw's decision thus demonstrates that he properly considered all relevant proof per the regulations, and substantial evidence supports his assessed functional limitations and ultimate mental RFC conclusion.

Nor does the conflicting proof from Dr. Lindsay in 2018 compel a different result. Indeed, as Plaintiff contends, Dr. Lindsay's treatment notes, standing alone, suggest potentially more restrictive mental limitations than the ALJ determined per his RFC finding. [*See, e.g.*, R. at 702–03 (noting in May 2018 that Thompson suffered from chronic anxiety and depression, suicidal thoughts, and social avoidance that impacted her ability to work and interact with others, and observing that Thompson's ORS score reflected "profound symptoms and distress")]. But, to the extent Thompson argues that Dr. Lindsay's collective findings and treatment notes (inclusive of but not limited to the ORS scores) compel reversal of the ALJ's decision, the Court emphasizes that it may not reweigh the evidence if substantial evidence supports the current determination— *even if* substantial evidence may support a contrary conclusion, or the Court may have reached a different conclusion on independent original review. *See, e.g.*, *Warner*, 375 F.3d at 393; *Mullen*, 800 F.2d at 545; *Longworth*, 402 F.3d at 595; *Her*, 203 F.3d at 389–90. And, as discussed here at length, the Court finds that ALJ Holsclaw corralled substantial evidence to support his mental RFC conclusion within the at-times conflicting broad universe of proof.

Accordingly, because the ALJ applied the proper legal and regulatory standards in reaching his mental RFC determination, appropriately considered the relevant medical and other evidence,

and offered substantial evidence supporting his conclusion, the Court may not disturb his RFC finding in this appeal.[10]

## IV.  CONCLUSION

For all of the reasons discussed, the Court **GRANTS** the Commissioner's motion for summary judgment (DE 17) and **DENIES** Thompson's competing motion (DE 15). A corresponding Judgment follows.

This the 9th day of March, 2021.



Signed By:
Matthew A. Stinnett  MAS
United States Magistrate Judge

---

[10] Thompson offers a brief nod to case law outlining the treating physician rule, *see* DE 15-1, at Page ID # 1164, but she does not actually make any argument that the ALJ violated the treating physician rule in this case. Nor does Plaintiff identify, in relation to such an argument or the cited case law, any specific treating source opinions that she believes should have been assigned greater weight.  And, Plaintiff does not otherwise structurally identify in her brief a treating-source-violation component of her argument in this appeal.  Accordingly, to the extent Thompson intended to present such a contention here, it is insufficiently developed to permit legitimate judicial review, and the Court deems it waived.  *See* Mokbel-Aljahmi, 732 F. App'x at 402 n.5 (6th Cir. 2018) (finding that no treating-source issue was before the Court where the plaintiff alluded to the rule only in one conclusory statement); *see also United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) (reaffirming the "settled . . . rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").